**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**UNITED STATES OF AMERICA**          :

    **v.**          :

              **CRIMINAL NO. RDB 09-0478**

**SAVINO BRAXTON**

              :

**...oOo...**

**GOVERNMENT'S RESPONSE TO DEFENDANT'S PRETRIAL**
**MOTION TO SUPPRESS EVIDENCE**

Now comes the United States of America by its counsel, Rod J. Rosenstein,

United States Attorney for the District of Maryland,  and John F. Purcell, Jr.,  Assistant

United States Attorney for said District and in response to the pretrial motion to

suppress evidence filed by the defendant says:

**I.      PROCEDURAL BACKGROUND**

The defendant,  Savino Braxton ("Braxton") is charged in a one-count indictment

alleging that on September 2, 2009, he possessed with intent to distribute one kilogram

or more of heroin, in violation of 21 U.S.C. § 841(b)(1)(A).  Braxton was initially charged

by a criminal complaint filed following his arrest by DEA agents on September 2, 2009.

The indictment was returned by a federal grand jury on September 9, 2009.  (Docket at

8).   The present motion to suppress was filed on November 5, 2009. (Docket at 16).

Following his arrest, Braxton was released on conditions and ordered to reside at

Volunteers of America.   On March 1, 2010, Pretrial Services reported to the court that

Braxton absconded on February 26, 2010, when he failed to return from a medical

appointment.  Braxton remained a fugitive until his capture on August 17, 2012.

If deemed necessary, a hearing on Braxton's motion to suppress is scheduled for

December 12, 2012 at 2:30 p.m.  The trial is scheduled for February 11, 2013.

## II.    FACTUAL  BACKGROUND

The case is relatively straightforward.   Braxton was arrested by DEA agents on

September 2, 2009, in conjunction with the execution of a federal search warrant at 5312

Goodnow Road, Apt. I, Baltimore, MD (Goodnow Road) in the course of which in

excess of one kilogram of heroin was recovered.  The search warrant for Goodnow Road

was issued by United States Magistrate Judge Beth P. Gesner.  A copy of the search

warrant and supporting affidavit of DEA TFO Michael Collins are attached as Exhibit 1.

As described in the search warrant affidavit, the arrest of the defendant was

preceded by a controlled drug payment of $2250 to Braxton by a CS in July 2009 and by

a controlled purchase of heroin by the CS from Braxton in August 2009.  Aff. at 7.  The

heroin purchase by the CS actually occurred inside Goodnow Road, which Braxton and

the CS were observed to enter together after Braxton arrived for the meeting in the

same purple 1999 Honda Braxton was operating when he was arrested on September 2,

2009.  Aff. at 8.

2

Following the two drug related transactions between the CS and Braxton, a federal search warrant was obtained for Goodnow Road.  On September 2, 2009, at about 5:00 p.m.,  DEA TFO David Philips observed Braxton exit Goodnow Road and enter the purple 1999 Honda.  Agents followed the  Honda to the 5000 Block of Sinclair Lane where it was stopped and Braxton was arrested.  Agents recovered 28 grams of heroin from the center console of the Honda.  Keys recovered from Braxton were used to enter Goodnow Road, from which the following evidence was recovered:

Item N-3: $4270 recovered from a shelf in the kitchen pantry;

Item N-4: a drug tally sheet bearing Braxton's name;

Item N-5: a BGE utility bill for 5312 Apartment I, in Braxton's name;

Item N-6: a green tote bag found in the pantry. It contained four bottles of manitol, a box of plastic bags and gloves.  A bottle of quinine, and a shoe box containing gel caps, strainers, a digital scale and a bus ticket in Braxton's name were also recovered in a kitchen cabinet, and a second scale was found in the pantry.

The following packages of heroin were also recovered:

Ex. 3 (pantry) two bags containing 500 grams of heroin (net);

Ex. 4 (kitchen stove) 464 grams of heroin (net) in pelletized form;

Ex. 5 (kitchen cabinet) 40 grams of heroin (net)

There were no post-arrest statements by Braxton.

II      **Legal Analysis**

    **A.      The Search Warrant for Goodnow Road was Supported by Probable Cause**

The search warrant for the premises of 5312 Goodnow Road,  Apt. 1,  was authorized by a United States Magistrate Judge for the District of Maryland.   The standards of review of a search warrant by this court are well established.  In reviewing a determination of probable cause for a search warrant, the trial court must accord "great deference" to the issuing judicial officer's finding of probable cause based on the facts submitted in the affidavit.  *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990).  The reviewing court must limit its inquiry to asking "only whether the magistrate had a 'substantial basis...for concluding' that probable cause existed."  *Id*., (quoting, *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).  To find probable cause, the magistrate must simply "make a practical common sense decision whether, given all the circumstances in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id*.;  *Massachusetts v. Upton*, 466 U.S. 727 (1984)(probable cause exists when "there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched.") and see, *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)(same).  "Only the probability and not a prima facie showing of criminal activity is the standard of probable cause."  *Blackwood*, 913 F.2d at 142, (quoting *Spinelli v. United States*, 393 U.S.

4

410, 419 (1969)).  The task of the reviewing court is NOT to conduct a *de novo*

determination of probable cause, but only to determine whether there is substantial

evidence on the record to support the decision of the issuing judge.  *Massachusetts v.*

*Upton*, 466 U.S. at 728.

The search warrant issued for Goodnow Road was supported by probable cause.

The supporting affidavit of TFO Collins initially recounted information obtained from

the CS in July 2009.  Aff. at 5.   The CS was described to be an admitted,  experienced

drug trafficker familiar with the manner and means of drug trafficking.  Aff. at 5.  The

CS reported that it knew a person, known to the CS as "Vano," who was selling large

quantities of heroin in Baltimore that Vano obtained in New York.   Aff. at 5. The CS

also identified two locations it knew were used by Vano, including 5312 Goodnow

Road, where the CS had assertedly acquired heroin from Vano. Aff. at 6.  The CS also

provided a physical description of Vano that was consistent with a photograph of

Braxton, which the CS identified to be that of Vano.  The CS also described Vano to

have been recently released from "16 years" in federal prison on a drug trafficking

charge, which again, was consistent with Braxton, who, in March 1991, was sentenced to

225 months in federal prison for distribution of heroin and cocaine and had recently

been released.  Aff. at 9.

The affidavit also detailed the use of the CS to contact Braxton, using a cell phone

number provided by the CS, to conduct a controlled, tape recorded drug payment to Braxton in August 2009.  Aff. at 7.  The affidavit also described the August 2009 controlled purchase of heroin from Braxton by the CS which occurred within Goodnow Road.  Aff. at 8.  The affidavit recounted that agents were conducting surveillance at Goodnow Road when Braxton arrived in the purple 1999 Honda, and that the CS and Braxton met and were seen entering  Goodnow Road together.  Aff. at 8.  The affidavit also related that Maryland MVA records revealed that 5312 Goodnow Road, Apt. I (the target location) was an address used by Braxton and that BGE records showed an active account in Braxton's name for Apt. I.  Aff.  at 8-9.  These facts and circumstances supported the Magistrate Judge's finding that there was probable cause that evidence of drug trafficking would be found in Goodnow Road.

Of course, even if the court were to conclude that the search warrant for Goodnow Road was issued without probable cause, absent a showing that the warrant was not valid on its face or contained material information that the affiant **knew** was false, the good faith reliance of the police on the validity of the warrant issued by a neutral and detached magistrate was completely justified.  *United States v. Leon*, 468 U.S. 897, 913 (1984).  Pursuant to *Leon,* so long as the evidence was seized from the residence during the execution of a properly issued warrant, the fruits of the search should not be suppressed even if the affidavit is found to lack probable cause.  *See United States v.*

*Lalor*, 996 F.2d at 1582 (evidence admissible under *Leon* good faith exception where warrant failed to establish a nexus to the residence searched).  In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. *United States v. Hyppolite*, 65 F.2d 1151, 1155 (4th Cir. 1995).  No such showing has been made here.

**B.    Braxton's *Pro Se* Motion for a *Franks* Hearing Should be Denied**

On October 16, 2012, Braxton filed a *pro se* motion challenging the probable cause for the search warrant for Goodnow Road and requesting a *Franks* hearing. Doc. No. 40.

The law in this Circuit is well settled that an accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit. In its decision in *Franks v. Delaware*, however, the Supreme Court carved out a narrow exception to this rule, whereby an accused is entitled to an evidentiary hearing on the veracity of statements in the affidavit.  See *Franks v. Delaware*,  438 U.S. 154, 155–56 (1978);  *United States v. Allen*, 631 F.3d 164, 171-72 (4th Cir. 2011).   To be entitled to a *Franks* hearing, however, the accused must make a *substantial* preliminary showing that false statements were either knowingly or recklessly included in an affidavit supporting a search warrant and that, without those false statements, the affidavit cannot support a

7

probable cause finding. *Franks*, 438 U.S. at 155–56.   Therefore, if the allegedly false

statements are not necessary for the probable cause finding, the accused is not entitled

to a *Franks* hearing. See  *Id*.

Here, apart from failing to make a substantial showing that the CS's

identification of Braxton as the person he met with was false,  Braxton has failed to

either allege or substantially show that the *affiant* knowingly and intentionally (or with

reckless disregard)  included any false information from the CS in the affidavit.  In his

motion, Braxton asserted that the affiant "provided *via his informant*, false and reckless "

information identifying Braxton as the person the CS met with during the two recorded

drug related transactions described in the affidavit.  Mot at ¶ 3, 5.  Braxton also denies

that he was in fact the person the CS met with.  Mot at ¶ 5.   This is not enough.

"To satisfy the *Franks*' intentional or reckless falsity requirement for an omission,

the defendant must show that facts were omitted with the intent to make, or in reckless

disregard of whether they thereby made, the affidavit misleading." *United States v. Tate*,

524 F.3d 449, 455 (4th Cir.2008). "[T]he omission [must be] designed to mislead or [must

be] made with reckless disregard of whether it would mislead." *Id*.   Here, Braxton has

neither alleged nor substantially shown the existence of such intent on the part of the

*affiant*, alleging (barely) that the CS lied to the affiant when it stated that it met with

Braxton at the two controlled meetings.[1]  Absent a substantial showing that the *affiant* intentionally included false information conveyed by the CS– that is, that the affiant included false information that the *affiant* knew was false - there is no basis for a *Franks* hearing.   "Therefore, to succeed on his *Franks* claim, Blauvelt must make a substantial preliminary showing that [the officers] omitted material facts that when included would defeat a probable cause showing—i.e., the omission would have to be necessary to the finding of probable cause—and that the omission was designed to mislead or was made with reckless disregard of whether it would mislead." *United States  v. Blauvelt*, 638 F.3d 281, 289 (4th Cir. 2011).  Braxton has made *no* showing as to the knowing inclusion of false information in the affidavit on the part of the *affiant.*

In addition, though it is understandable why Braxton would deny being the person who was recorded during the two drug related transactions with the CS, it remains that, given that during both transactions Braxton was independently identified by surveillance agents as the person meeting with the CS, that Braxton can be identified on the video of the July 30, 2009 (controlled payment) transaction, and that two agents followed Braxton back to Goodnow Road after that transaction, the requirement that Braxton make a "substantial showing" of knowing falsity on the part of the affiant appears to be  impossible to meet.  See Exhibit 2, DEA report of transaction of July 30,

---

[1] Of course, the government does not at all credit Braxton's allegations of falsity on the part the CS or the affiant.

2009. (Redacted).  Of course, Braxton has not mentioned that he was independently

identified and he has neither alleged nor shown the falsity of the information in the

agents' reports in this respect.

Accordingly, the government submits that Braxton has failed to make the

substantial showing of *intentional* falsity on the part of the *affiant* that is a necessary

predicate for the court to hold a *Franks* hearing.  His motion for such a hearing should

therefore be denied.

### C.    The Arrest of Braxton and the Search of the Honda Were Lawful

#### 1.    The Warrantless Arrest of Braxton While He Was Driving the Honda From Goodnow Road Was Lawful

As noted, on September 2, 2009, prior to the execution of the search warrant,

Braxton was observed to exit Goodnow Road and leave the area in the purple 1999

Honda, which was subsequently stopped.  Braxton was arrested and 28 grams of heroin

were recovered from the center console of the Honda.   Aff. 8.

As already discussed,  probable cause to arrest exists if "at that moment the facts

and circumstances within [the officers'] knowledge and of which they had reasonably

trustworthy information were sufficient to warrant a prudent man in believing that the

[suspect] had committed or was committing an offense."  *Beck v. Ohio*, 379 U.S. 89, 91

(1964); *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).  Probable cause is based upon the

"totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230-31(1983); *United States v. Garcia*, 848 F.2d 58, 60 (4th Cir.1988); *United States v. McCraw*, 920 F.2d 224 (4th Cir. 1990). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause." *Gates*, 462 U.S. at 243 n. 13. Probable cause is a " 'practical, nontechnical conception' " dealing with " 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Illinois v. Gates*, 462 U.S. at 231. The standard is "incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). However, " '[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt,' and that the belief of guilt must be particularized with respect to the person to be searched or seized." *Id*. As the Supreme Court has stated, "probable cause is a fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. at 232. The determination of probable cause requires a common sense approach to the particular facts in each case. *See United States v. Cortez*, 449 U.S. 411, 418 (1981).

Here, the information contained in the affidavit for the search warrant for

Goodnow Road also detailed facts and circumstances that provided probable cause to arrest Braxton while he was operating the purple Honda on September 2, 2009. As noted, the affidavit identified Braxton as the source of what the agents knew to be 50 grams of heroin that was purchased by the CS from Braxton in August 2009.[2] Aff. at 8. That agents' knowledge of that heroin distribution alone provided a basis to arrest Braxton.

In addition, the facts and circumstances providing probable cause to arrest Braxton on September 2, 2009, included the agents' knowledge of the prior videotaped and recorded payment of $2250 by the CS to Braxton on July 30, 2009. Aff. 7. This transaction took place, in part, in the CS's vehicle while it was parked in front of 5312 Goodnow Road, where Braxton was observed to return after meeting the CS.[3] Given the background information from the CS and the circumstances of the controlled payment and purchase , there was ample probable cause to arrest Braxton on September 2, 2009.

_____

[2] This was the heroin purchase by the CS of August 18, 2009, which occurred within Goodnow Road.

[3] The agency reports relating to the controlled payment by the CS on July 30, 2009 and the heroin purchase by the CS on August 18, 2009, have been provided to Braxton.

2.    **The Search of the Honda was Permissible Incident to the Arrest of Braxton**

The facts and circumstances that provided probable cause to arrest Braxton for drug trafficking while he was driving the purple Honda on September 2, 2009, also provided, incident to Braxton's arrest, a reasonable basis to search the passenger compartment of the Honda for evidence of drug trafficking. In *Arizona v. Gant* 556 U.S. 332, 343-44 (2009) the Supreme Court, while abrogating much of its holding in *New York v. Belton,* 453 U.S. 454 (2009), recognized the continued viability of a lawful search of a vehicle incident to the arrest of an occupant in circumstances, such as are present here, where the search of the vehicle **reasonably relates to the offense of arrest**. "[W]e also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Gan*t, 556 U.S. at 343 - 44.[4] See, *United States v. Badger*, 445 Fed.Appx. 648, 650 (4th Cir. 2011) ("In 2009, however, the Supreme Court in *Arizona v. Gant* (citations omitted) clarified and limited *Belton* by holding that police may conduct an automobile search incident to a lawful arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment or when it is "**reasonable to believe evidence relevant to the crime of arrest might be**

---

[4] *Gant* was decided on April 21, 2009, and so applies to the search incident to arrest in this case.

13

**found in the vehicle**.") (citations in original).

      3.      **The "Automobile Exception" Provided Another Basis
For the Search of the Honda**

While *Gant* has limited the scope of searches incident to arrest previously

authorized by *Belton,* the Supreme Court did not at all alter the long-standing rule that if

officers have "probable cause to believe a vehicle contains evidence of criminal activity,"

they may search any area of the vehicle where evidence of criminal activity may be

found. *United States v. Southerland*, 442 Fed.Appx. 767, 769 (4th Cir. 2011) (citing cases);

*United States v. Dickey–Bey*, 393 F.3d 449, 456–57 (4th Cir.2004) ("We need not, however,

decide whether the search of Dickey–Bey's automobile was properly incident to his

arrest because we conclude that the circumstances in this case provided officers

independent probable cause to search the automobile.").

The long recognized "automobile exception" permits police to perform a

warrantless search of *any* part of a vehicle as to which there is probable cause to believe

that evidence of criminal activity may be found, including the trunk and containers in

the trunk. *See United States v. Ross*, 456 U.S. 798, 825  (1982) ("If probable cause justifies

the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle

and its contents that may conceal the object of the search."); see also *Maryland v. Dyson*,

527 U.S. 465, 467 (1999) (per curiam) (reiterating that the "automobile exception does not

have a separate exigency requirement," beyond the ready mobility inherent to vehicles);

*Wyoming v. Houghton*, 526 U.S. 295, 307 (1999) (holding that "police officers with probable cause to search a car may inspect passengers' belongings," in addition to those of the driver, if probable cause exists to believe that the belongings "are capable of concealing the object of the search"); *California v. Acevedo*, 500 U.S. 565, 573 (1991) (holding that, under the automobile exception, officers may search inside a closed container that is in a vehicle if they have probable cause to search the container, even if they "lack probable cause to search the entire car"); *Carroll v. United States*, 267 U.S. 132 (1925) (origin of the automobile exception).

Here, the facts and circumstances known to the agents on September 2, 2009, included that the agents observed Braxton utilize the purple Honda in relation to a heroin transaction with the CS at Goodnow Road in August 2009. (Aff. at 8). Pursuant to the "automobile exception," Braxton's use of the Honda that day, in combination with the other facts and circumstances known to them, provided probable cause for the search of the Honda.

Accordingly, the facts and circumstances known to the agents on September 2, 2009, justified the search of the interior of the Honda pursuant to the automobile exception independent of the justification to search that existed incident to Braxton's arrest, therefore providing another basis for the admission of the 28 grams of heroin recovered from the front center console of the Honda.

## **Conclusion**

The government respectfully submits that, for the above reasons, the defendant's motion to suppress evidence should be dismissed.  The government further submits that since the court may determine the existence of probable cause for the search warrant for Goodnow Road, as well as for the arrest of Braxton and for the search of the Honda on September 2, 2009,  based solely upon the facts and circumstances set forth in the affidavit, no evidentiary hearing is necessary.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By:_____/__/_____
John F. Purcell, Jr.
Assistant United States Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800

16

**Certificate of Service**

I hereby certify that on this 19th day of November 2012, a copy of the foregoing

Government's Response to Defendant's Motion To Suppress Evidence was electronically

filed with the Clerk of the District Court and by that means served upon counsel for the

defendant.

_____/__/_____
John F. Purcell, Jr.
Assistant United States Attorney

17