IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. JKB-09-478 |
| SAVINO BRAXTON, | * | |
| | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

On July 24, 2015, after a criminal trial convened in this Court, a jury found Defendant Savino Braxton ("Defendant") guilty of possession with intent to distribute one kilogram or more of a substance containing heroin, in violation of 21 U.S.C. § 841(a)(1). (ECF No. 158.) On August 5, 2015, Defendant submitted the pending *pro se* Motion for New Trial under Rule 33(a) of the Federal Rules of Criminal Procedure; the Motion was docketed on September 3, 2015, following a hearing that day. (ECF Nos. 163–1, 169.)[1] The Government filed a response in opposition on October 6, 2015 (ECF No. 178). Defendant did not file a timely reply, and so the Motion is now ripe for decision.[2] For the reasons explained below, Defendant's Motion for New Trial will be DENIED IN PART and HELD IN ABEYANCE PENDING HEARING IN PART.

*I. Background*

The history of this felony drug case is long and circuitous. Defendant was first indicted in September 2009 in one count alleging a violation of 21 U.S.C. § 841(a)(1). (ECF No. 8.) The

---

[1] When Defendant initially submitted his *pro se* Motion, he was represented by counsel, and the *pro se* submission was therefore improper. However, following a hearing on September 3, 2015, discussed *infra*, the Court granted Defendant's request to proceed *pro se*, and it then directed the Clerk to docket Defendant's Motion accordingly.
[2] Most of Defendant's theories underlying his Motion for New Trial can be resolved on the briefs: as to these theories, no hearing is necessary. *See* Local Rules 207, 105.6 (D. Md. 2014).

Government thereafter gave notice, pursuant to 21 U.S.C. § 851, of its intent to seek an enhanced mandatory minimum sentence. (ECF No. 49.) Because of the weight of the substance Defendant was alleged to have possessed (*i.e.*, at least one kilogram) and because of Defendant's prior criminal history, he faced a minimum mandatory sentence of twenty years' incarceration if convicted with the section 851 notice on the docket. *See* 21 U.S.C. § 841(b)(1)(A).

An extended delay ensued, attributable in large part to Defendant's February 2010 unauthorized departure from the halfway house where he had been ordered to remain. Defendant was eventually apprehended in August 2012 (ECF No. 30), and a jury trial was set in for February 2013. The Government offered Defendant a plea agreement through which Defendant could plead guilty to the single-count indictment in exchange for the Government's assurance that it would not seek a prison term in excess of 180 months.[3] Defendant resisted the Government's offer; however, on the morning that trial was scheduled to begin, Judge Richard Bennett of this Court urged him to take the plea rather than risk exposure to a mandatory twenty-year sentence. Defendant thereafter reversed course and pleaded guilty to the single count of possession with intent to distribute. (ECF No. 63.) On June 17, 2013, Judge Bennett sentenced Defendant to 138 months' incarceration. (ECF No. 71.)

On June 26, 2013, Defendant filed a notice of appeal with respect to his conviction. (ECF No. 73.) On appeal, Defendant argued—through Counsel Andrew R. Szekely—that Judge Bennett had improperly intervened in the plea negotiations in violation of Rule 11(c)(1) of the Federal Rules of Criminal Procedure and that Defendant's plea was consequently involuntary. In an April 28, 2015, opinion, the United States Court of Appeals for the Fourth Circuit agreed: though the court was fully confident that Judge Bennett had acted with the best of intentions and

---

[3] Under the terms proposed, the Government would have withdrawn the section 851 notice that otherwise set the minimum sentence at twenty years.

in the interest of justice, the court also found a "reasonable probability" that Defendant's substantial rights were affected by the judge's intervention. *United States v. Braxton*, 784 F.3d 240, 247 (4th Cir. 2015). The court consequently vacated both the sentence and the underlying guilty plea, and, as is customary in such circumstances, the court directed that the case be assigned to a different judge below for further proceedings. The matter was then transferred to the undersigned.

On remand in this Court, Mr. Szekely initially continued to represent Defendant. However, after Szekely refused to file several motions that Defendant requested (and that Szekely evidently deemed frivolous[4]), Defendant sought leave to represent himself going forward. (ECF No. 115.) At a July 10, 2015, pretrial conference, the Court engaged in a lengthy and detailed colloquy with Defendant to determine his wishes with respect to representation at trial. Pursuant to *Faretta v. California*, 422 U.S. 806 (1975), the Court warned Defendant of the dangers and disadvantages of self-representation, and it urged him to reconsider. Defendant, however, insisted that he wished to proceed *pro se*, and the Court granted his request.

On July 24, 2015, after a four-day trial, a jury found Defendant guilty of violating 21 U.S.C. § 841(a)(1). (ECF No. 158.) Following the verdict, Defendant asked the Court to reappoint Szekely as defense counsel, and the Court granted this request as well—but days later, on August 5, Defendant changed his mind once again and sought leave to represent

---

[4] During a July 10, 2015, pretrial conference, Szekely, without directly criticizing his then-client or exposing confidential attorney-client communications, indicated that he viewed Defendant's proposed motions as legally unwarranted and improper:

> MR. SZEKELY: There's always, sort of, I guess, three types of client requests: there's things the client and I are in agreement on, and we agree and we proceed down that way; sometimes there's things a client would like to have a lawyer do that . . . perhaps a lawyer will . . . out of the interest of the attorney-client relationship proceed to do, and there's a third area where a client has certain positions and beliefs that result in a request to file certain things that I have felt I can't file or shouldn't file. And I guess it's those things in category number three that bring us here today.

Pretrial Conference at 9:40:11 a.m., *United States v. Braxton*, Crim. No. JKB-09-478 (July 10, 2015).

himself "throughout the post[-]conviction, sentencing phase, and appellate process in this case." (ECF No. 163 at 1.) Along with his request to represent himself, Defendant attempted to submit a *pro se* Motion for New Trial, a procedurally improper move given that Szekely technically represented him at that point.

On September 3, 2015, the Court conducted a second, lengthy *Faretta* hearing. It again advised Defendant that he would be far better off with the assistance of an experienced and competent attorney.[5] Defendant was adamant, however, that he wished to represent himself—

---

[5] At this second *Faretta* hearing, the Court expressly asked Defendant whether he wished to (1) proceed *pro se*, (2) continue working with Szekely, or (3) seek appointment of new counsel. Defendant repeatedly stated that he desired to represent himself:

> THE COURT: [As] part of your motion for a new trial, which is . . . now appended to your motion to represent yourself . . . you indicated that you actually wanted to be represented by a different lawyer, that you wanted Mr. Szekely to be removed from your case and that you wanted to be represented by new counsel, and that's different from asking the Court for permission to represent yourself. So I feel like I've got two requests from you pending in front of me at the moment.
>
> DEFENDANT: Well, I don't believe that I actually said that I wanted new counsel. I believe . . . if I was advised that I could be represented by new counsel at the time that you had the [first] *Faretta* hearing . . . that I would have probably took the choice to have an attorney represent me. But I don't believe I said that I wanted another attorney [now].
>
> THE COURT: Well, regardless of what you've said up to this point, why don't you tell me now—what is your request? Do you want to continue with Mr. Szekely as your lawyer; do you want me to consider discharging Mr. Szekely and appointing a new panel lawyer to represent you for proceedings going forward; or do you want to represent yourself? . . . Your choices are the three that I just laid out for you. . . . What do you want among those three?
>
> DEFENDANT: Well, I'm compelled to represent myself then . . . .

*Faretta* Hearing at 9:32:33 a.m., *United States v. Braxton*, Crim. No. JKB-09-478 (September 3, 2015). Even after dismissing Szekely at Defendant's request, the Court gave Defendant another opportunity to seek the appointment of new counsel. Defendant declined:

> THE COURT: Do you request that the Court appoint new counsel to represent you in this matter, a right that is a fundamental right under the Sixth Amendment but is obviously in conflict with another fundamental constitutional right that you have, which is the absolute right to represent yourself? . . . What do you want?
>
> DEFENDANT: At this point, I'm going to represent myself because I don't think . . . you're going to allow me to file the ineffective assistance of counsel . . . with an attorney.

4

and the Court ultimately honored his wishes, discharging Szekely and then directing the Clerk to docket the *pro se* Motion for New Trial (ECF No. 169). That Motion is now ripe for decision.

## II. Analysis

### A. Overview

Rule 33(a) of the Federal Rules of Criminal Procedure provides that, upon the defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Despite this seemingly expansive language, the Fourth Circuit has cautioned that a district court should "exercise its discretion to grant a new trial 'sparingly.'" *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (quoting *United States v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997)).

Defendant bases his Motion for New Trial on three theories. First, Defendant claims that Mr. Szekely provided him with constitutionally defective assistance both during the initial appeal and on remand. Second, Defendant accuses the Government of engaging in prosecutorial vindictiveness. Third, Defendant posits that his choice to proceed *pro se* at trial was not knowing and voluntary.

The Court addresses each of these contentions in turn.

### B. Ineffective Assistance

Claims pertaining to ineffective assistance of counsel are typically litigated in collateral proceedings. However, the Fourth Circuit has recognized that a defendant may bring such a claim in a timely motion for a new trial under Rule 33. *See United States v. Martinez*, 136 F.3d

---

> THE COURT: Well, if you are representing yourself, I'm going to allow you to file anything that you want to file. If you are represented by an attorney who is a member of the bar of this Court . . . then I will permit that attorney to file any motion . . . that that lawyer deems appropriate to file.
>
> DEFENDANT: But I, I choose to represent myself.

*Id.* at 9:41:15 a.m.

5

972, 979 (4th Cir. 1998) ("A defendant can raise the claim of ineffective assistance of counsel in three ways: (1) in a motion for a new trial based on anything other than newly discovered evidence; (2) on direct appeal if and only if it conclusively appears from the record that his counsel did not provide effective assistance; or (3) by a collateral challenge pursuant to 28 U.S.C. § 2255.").[6]

Regardless whether an ineffective assistance claim is brought under Rule 33 or on collateral review, the standard is the same. *See United States v. Russell*, 221 F.3d 615, 619-20 (4th Cir. 2000). To prevail, the defendant must show that (1) counsel's performance was deficient, *i.e.*, so erroneous that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) the deficient performance prejudiced the defense, *i.e.*, counsel's errors "deprive[d] the defendant of a fair trial . . . whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In evaluating whether a defendant has made these showings, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Defendant here charges Mr. Szekely with ineffective assistance at both the prior appellate and remand stages. With respect to the appeal, Defendant alleges that "Szekely vehemently choosed [*sic*] to challenge the voluntiarness [*sic*] of [Defendant's] guilty plea via the previous district court's participation in plea bargaining negotiations" and that, had Defendant been aware that a successful appeal would result in a new trial with the possibility of a section 851 enhancement (and a concomitant twenty-year mandatory minimum), Defendant never would

---

[6] For this reason, many of the cases cited in the Government's opposition memorandum are unhelpful. Those cases concern whether an appellant may argue ineffective assistance on direct review; they emphasize that "[u]nless an attorney's ineffectiveness is conclusively apparent on the face of the record," such claims should be reserved for a collateral proceeding "in order to permit sufficient development of the record." *United States v. Brown*, 576 F. App'x 145, 148 (4th Cir. 2014). That concern is inapplicable on a Rule 33 motion, however, because the district court has the capacity to hear new testimony as needed to resolve the motion.

have appealed in the first place. (ECF No. 169 at 3.) With respect to the remand, Defendant accuses Szekely of (1) failing to file certain pretrial motions (which Szekely deemed frivolous)[7] and (2) failing to secure an attractive plea deal, preferably ten years (or, at most, the 138 months to which Defendant was previously sentenced). (*Id.* at 6.)

Concerning the remand, Defendant's arguments are groundless. The mere fact that Szekely was unable to obtain the plea offer that Defendant had hoped for does not render Szekely's representation constitutionally deficient. *See Robinson v. United States*, Civ. No. PJM-07-2528, 2008 WL 5135166, at *3 (D. Md. Dec. 3, 2008) (rejecting defendant's theory of ineffective assistance where counsel was unable to secure the lenient plea offer that defendant desired and where defendant alleged he thus felt "forced" to proceed to trial), *appeal dismissed*, 324 F. App'x 228 (4th Cir. 2009) (per curiam); *see also Parada-Mendoza v. United States*, No. 1:13-cv-603, 2014 WL 6609294, at *2 (E.D. Va. Nov. 20, 2014) (rejecting defendant's theory of ineffective assistance where counsel was unable to secure a plea agreement on the noncooperation terms that defendant had requested), *appeal dismissed*, 606 F. App'x 129 (4th Cir. 2015) (mem.).[8] As for Szekely's refusal to file motions that he deemed frivolous, he was simply complying with his obligations under the Maryland Lawyers' Rules of Professional Conduct. *See* Md. Code Ann., Md. Rule 16-812 app. Rule 3.3 (describing a lawyer's duty of candor before the tribunal). And since the Court subsequently considered (and denied) Defendant's motions after he filed them *pro se*, Szekely's refusal to file them plainly worked no prejudice on Defendant. (*See* ECF Nos. 134, 140.)

---

[7] *See supra* note 4 (Szekely's comments regarding the proposed motions). Specifically, Defendant claims that he had urged Szekely to file (1) a motion to dismiss the indictment for lack of jurisdiction/venue and for destruction of evidence and (2) a motion to strike the drug quantity identified in the indictment. (ECF No. 169 at 6.)
[8] In fact, as will be discussed below, the plea deal that the Government offered Defendant on remand was arguably *more favorable* to him than the deal to which he had agreed in the original proceedings before Judge Bennett.

Concerning the appeal, however, the Court is not in a position at this stage to determine whether Defendant's contention has merit. The Government supplied the Court with a copy of the oral argument transcript from the appeal; in that argument, Szekely stated that Defendant was adequately informed about the risks associated with a successful appeal and that he was proceeding with "eyes open." (ECF No. 178–1 at 2.) In all likelihood, Szekely's assertion was accurate: the Court has no reason to doubt his veracity. Nevertheless, Defendant now avers—in filings with this Court—that he was never advised of the risk. And Szekely's statements during argument before the Fourth Circuit were not made under oath and were not in the nature of testimony. The Court cannot adjudge the merits of Defendant's claim without further evidence concerning precisely what was said (or unsaid) between attorney and client at the time of the appeal.

This raises an important issue—namely, the extent to which the Court can require Szekely to testify about communications that indisputably occurred within the scope of the attorney-client relationship. Ordinarily, of course, such communications are privileged. But as the Supreme Court recognized in *Strickland*, "inquiry into counsel's conversations with the defendant may be . . . critical to a proper assessment of counsel's . . . litigation decisions." 466 U.S. at 691. Subsequent to the *Strickland* decision, the Court of Appeals of Maryland adopted the "universally accepted rule that the privilege is waived by the client in any proceeding where he or she asserts a claim against counsel of ineffective assistance and [the attorney-client] communications . . . are relevant to the determination of the quality of counsel's performance." *State v. Thomas*, 599 A.2d 1171, 1177-78 (Md. 1992). Federal courts have likewise recognized that "[t]he privilege may be implicitly waived by [a client's] claiming ineffective assistance of counsel or . . . otherwise raising issues regarding counsel's performance. *In re Lott*, 424 F.3d 446, 452-53 (6th Cir. 2005); *see also United States v. Sharp*, Crim. No. 2:07CR19, 2009 WL

1867619, at *2 (N.D. W. Va. June 29, 2009) (defendant who raised ineffective assistance claim in motion for new trial "impliedly waived his attorney-client privilege relating to the subject matter of his discussions with his trial attorneys"); *cf. United States v. Nicholson*, 611 F.3d 191, 217 (4th Cir. 2010) (adopting a "narrow waiver rule" whereby attorney-client communications that were revealed for purposes of adjudicating a conflict-of-interest claim were subject on retrial to a protective order).

The "attorney-client privilege is to be narrowly construed . . . and recognized 'only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)). Here, Defendant has placed his attorney's professional conduct squarely at issue. In so doing, Defendant has, for purposes of the pending Motion, waived the attorney-client privilege regarding communications about the consequences of a successful appeal alleging a Rule 11 violation.[9]

To summarize: while Defendant is *not* entitled to a new trial on the basis of Szekely's conduct during the remand proceedings, his Motion will be held in abeyance pending an evidentiary hearing to determine whether he was sufficiently informed about the risks of a successful appeal.

## C. *Prosecutorial Vindictiveness*

In addition to his ineffective-assistance theory, Defendant argues that the Government engaged in impermissibly vindictive behavior by (1) offering a plea deal on remand that was

---

[9] The Court emphasizes the narrowness of its determination here: privilege is waived *only* with respect to communications between Defendant and Szekely concerning the appeal and its possible consequences, and *only* for purposes of resolving Defendant's *Strickland* claim.

9

more severe than Defendant's previous 138-month sentence and (2) threatening a section 851 enhancement if Defendant refused to accept the plea offer. (ECF No. 169 at 13.)[10]

To establish prosecutorial vindictiveness, a defendant must show that "(1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). Where a defendant exercises a procedural right and successfully attacks his criminal conviction, the prosecution "cannot retaliate against the defendant by seeking a harsher punishment upon retrial." *United States v. Williams*, 47 F.3d 658, 660 (4th Cir. 1995). Similarly, the prosecution "cannot reindict a convicted defendant on more severe charges after the defendant has successfully invoked an appellate remedy." *Id.*

However, in the pretrial posture, "the Supreme Court has allowed prosecutors to threaten criminal defendants with harsher prosecution during plea negotiations and to carry out those threats if the defendants refuse to accept the prosecution's plea offers." *Id.* As the Court noted in *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978), "in the 'give-and-take' of plea bargaining, there is no . . . element of . . . retaliation so long as the accused is free to accept or reject the prosecution's offer." *Cf. United States v. Whitley*, 759 F.2d 327 (4th Cir. 1985) (en banc) (rejecting due process challenge by a defendant who successfully attacked his original guilty plea to a lesser-included offense and who was thereafter convicted of the greater offense and subject to an accordingly harsher sentence).

Nothing in the Government's conduct here even remotely suggests vindictiveness. The Government neither reindicted Defendant on more severe charges nor attempted to secure a harsher sanction than the punishment Defendant would have faced had he been convicted after a

---

[10] As to Defendant's theory that the section 851 enhancement was unlawfully vindictive, the Court previously considered—*and rejected*—this very argument in the context of Defendant's motion to strike the Government's section 851 notice. (*See* ECF Nos. 110, 120.)

trial before Judge Bennett. On remand, as in the first round of proceedings, the Government made a plea offer to Defendant. Though lengthier than the sentence that Judge Bennett had imposed, the deal offered on remand (*i.e.*, no section 851 notice and a recommendation of 160 months) was arguably *more favorable* to Defendant than the deal originally offered, when the case was still before Judge Bennett (*i.e.*, no section 851 notice and a recommendation of no more than 180 months).

The fact that the Government threatened—and eventually filed—a section 851 notice does not taint the remand proceedings. On the contrary, this is precisely the type of negotiating tactic approved in *Bordenkircher*. What is more, the Government made an *identical* threat during the first round of proceedings; the only difference is that, on remand, Defendant did not take the plea offer. That was his choice to make; he cannot now avoid the consequences of that decision by casting false blame on the Government.

Defendant is not entitled to a new trial on the grounds of prosecutorial vindictiveness.

### D. Self-Representation

Finally, Defendant alleges that his decision to proceed *pro se* at trial was not knowing and voluntary because the Court supposedly failed to inform him about the possibility of new, substitute counsel being appointed "if the representation between he [*sic*] and Mr. Szekely was a conflict of interest that could not be resolved." (ECF No. 169 at 19.)[11]

Defendant's assertion is problematic for several reasons. First, at no point during the July 10, 2015, pretrial conference did Defendant give the Court reason to believe that his relationship with Szekely was so fundamentally defective as to justify the appointment of new, substitute

---

[11] Defendant here also rehashes his complaints about the representation he received from Szekely, alleging that he "felt betrayed and abandon [*sic*] . . . and therefore forced into presenting [*sic*] himself." (ECF No. 169 at 17.) The Court has already determined that Szekely's conduct on remand did not constitute ineffective assistance of counsel, *see supra* Part II.B. As for the appeal, the Court reserves its final determination until after it has heard from Szekely and Defendant (should he elect to testify), both under oath.

counsel.[12] Defendant complained about Szekely's unwillingness to file his motions, but Defendant did not even allude to the principal argument now underlying his Motion for New Trial—*i.e.*, that Szekely failed to inform Defendant about the consequences that would follow from a successful appeal alleging a Rule 11 violation.

Second, the Court *explicitly* asked Defendant whether he sought appointment of new counsel:[13]

> THE COURT: Are you telling me that it's not that you want to represent yourself; you just want a different lawyer?
>
> DEFENDANT: Well, if it takes that to—let me say this, okay, I was dissatisfied with, first, you not allowing me to file the *pro se* motions. . . . But then, when you denied me from filing the *pro se* motions to raise these issues, I turned to my attorney. . . . He was reluctant to file the motions, so then I said, I'm between a hard place and a hard rock . . . . If I represent myself, maybe I can get the motions filed.
>
> . . . .
>
> THE COURT: This isn't a decision for me to make; it's a decision for you to make. And it's really binary; by that I mean, it's one or the other. You're either going to be represented by a lawyer—
>
> DEFENDANT: —I made up my mind; my mind is made up. I [am] going to represent myself.

Later in the hearing, after a lengthy exchange in which the Court made clear that one of Defendant's key theories (*i.e.*, that 21 U.S.C. § 841 incorporates a scienter requirement with respect to specific drug quantities possessed) is legally groundless, the Court again questioned Defendant about his wishes:[14]

> THE COURT: You want to take a minute, talk to your lawyer a little bit further about this question of whether you want to have him represent you?

---

[12] *See United States v. Frazier*, 313 F. App'x 587, 588 (4th Cir. 2008) (per curiam) ("Whether a motion for substitution of counsel should be granted is within a trial court's discretion. . . . An indigent defendant has no right to a particular attorney and can demand new counsel only for good cause.").
[13] Pretrial Conference at 10:04:07 a.m., *United States v. Braxton*, Crim. No. JKB-09-478 (July 10, 2015).
[14] *Id.* at 10:29:34 a.m.

>DEFENDANT: No, I'm fine, I'm fine, I'm ready to go for it.

>THE COURT: Okay. And what do you want to do?

>DEFENDANT: I want to represent myself.

Defendant apparently understood the quandary he faced: he could either proceed *pro se* and file his motions, or he could proceed with representation while knowing that it was unlikely a lawyer, bound by the rules of professional conduct, would file such motions. The choice that the Court put to Defendant was not a choice between self-representation and working with Mr. Szekely; it was a choice between self-representation and *any* competent professional representation. Having firmly and repeatedly declined the Court's invitation to request new counsel, Defendant cannot now credibly aver that he was blind to that possibility.

Finally, the Court did not take Defendant's request to represent himself lightly. On the contrary, the Court engaged in an extended colloquy with Defendant, asking him questions about his education, his legal experience, his understanding of the serious charge that he faced, and his familiarity with the Federal Rules of Evidence and Criminal Procedure. The Court took pains to stress what a troubling proposition self-representation can be, and it urged Defendant to reconsider. Only after this thorough exchange did the Court accede to Defendant's request. Defendant's disingenuous effort now to plead ignorance and thereby secure yet *another* do-over is entirely unavailing.

*III. Conclusion*

For the foregoing reasons, an Order shall enter DENYING IN PART and HOLDING IN ABEYANCE PENDING HEARING IN PART Defendant's Motion for New Trial (ECF No. 169).

DATED this 28th day of October, 2015.

BY THE COURT:

/s/
James K. Bredar
United States District Judge